IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-01145-SKC-JPO

TIMOTHY KORBE,

      Plaintiff,

v.

DOUG ANDRUS DISTRIBUTING, LLC

      Defendant.

---

## ORDER ON DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S RETAINED EXPERT DANIEL B. BEST ECONOMIC LOSS OPINIONS (DKT. 41)

---

The above-referenced Motion is now before the Court. Dkt. 41. In his Rule 26(a)(2)(B) disclosures, Plaintiff Timothy Korbe disclosed Daniel B. Best, a certified vocational rehabilitation counselor, to offer opinions regarding his calculations of Plaintiff's past and future wage losses. Dkt. 41-1, pp.3-4;[1] Dkt. 41-2. Defendant Doug Andrus Distributing LLC seeks to preclude these opinions under Fed. R. Evid. 702.

The Court has jurisdiction under 28 U.S.C. § 1332(a). This case arises from a car accident that occurred on July 7, 2020, between Plaintiff and a person who was operating a commercial semi-truck while in the course and scope of his employment

---

[1] All docket (Dkt.) page number references are to the page number found in the blue CM/ECF header of the cited document.

with Defendant. The semi-truck collided with Plaintiff's vehicle causing Plaintiff to suffer various claimed physical and cognitive injuries. Plaintiff has sued Defendant under theories of respondeat superior and agency liability. Dkts. 17 and 68 (Section 3). Defendant has admitted the semi-truck driver was operating the vehicle within the course and scope of his employment at the time of the accident and has admitted liability. Only the nature and extent of Plaintiff's alleged injuries, damages, and losses, are in dispute.

The Court has carefully considered the arguments and matters raised by the parties in their exhibits and briefing on the Motion. Dkts. 41 (motion), 44 (response), 47 (reply). Based on the Court's analysis below, the Motion is GRANTED IN PART and DENIED IN PART.

### Legal Principles

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). A witness who qualifies as an expert by knowledge, skill, experience, training, or education may offer their opinions at trial if the proponent satisfies the court that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a

reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Trial courts determine the reliability of expert testimony by considering whether: (1) the theory has been or can be tested or falsified; (2) the theory or technique has been subject to peer review and publication; (3) there are known or potential rates of error regarding specific techniques; and (4) the theory or approach has general acceptance. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993)). Courts use these factors to determine the admissibility of non-technical expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). And of course, expert testimony must also be relevant to be admissible. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006); Fed. R. Evid. 401.

The district court performs an important gatekeeping function to assure expert testimony meets these requirements. *Macsenti v. Becker*, 237 F.3d 1223, 1230-34 (10th Cir. 2001). Even still, courts are mindful that "Rule 702 mandates a liberal standard" for the admissibility of expert testimony. *Cook*, 580 F. Supp. 2d at 1082. The rejection of expert testimony has proven "the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes (2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The decision to admit or exclude expert

testimony is committed to the sound discretion of the district court. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997).

## Analysis and Findings

**A.     Best's Past Wage Loss Opinion**

Defendant argues Best is not qualified to opine on Plaintiff's past wage loss, his methodology is unreliable, and his opinions will not assist the fact finder. The Court disagrees concerning the past wage loss opinion.

Best is a Certified Rehabilitation Counselor (CRC) with a Master of Arts in vocational rehabilitation counseling and vocational evaluation that he obtained in 1989. For numerous years of his career he has engaged in providing services which include labor market analysis, job analysis, counseling, earning capacity, vocational exploration, and job development and placement. Dkt. 41-2, pp.12-13. These services sometimes require Best to analyze a worker's earnings at different points in time. For example, he testified in his deposition:

> A.      . . . From a more global or wider-view standpoint, I'm absolutely qualified to take a look at what a person could do before a work event, an injury, a medical event, in comparison to what they're able to do after. And sometimes that involves an analysis of what they could earn previously in comparison to what they could earn now. It's rooted very deeply in vocational rehabilitation.
>
> Q.      Does calculating economic losses fall within your expertise?
>
> A.      Again, from a basic standpoint, yes. It's within the job duties that I perform. . ..
>
> Q.      Is it within your area of expertise to calculate lost earnings?
>
> A.      Yes.

Dkt. 44-1, p.16 ll:13-25, p.17 ll:1-9.

Throughout his career, since 1989, Best has testified as an independent vocational expert in over 10,000 Social Security disability hearings and has been qualified as an expert in vocational rehabilitation counseling and vocational evaluation in over 250 workers compensation cases, approximately 20 to 25 divorce proceedings, and over 50 personal injury and other cases throughout the state courts of Colorado, administrative courts, and this United States District Court.

Considering his education, training, and experience, the Court finds Best is qualified to opine on Plaintiff's past wage loss. But Defendant's concern over his methodology for calculating that loss is noted. Best calculated Plaintiff's past wage loss using simple math, considering a one year period (July 2020 – July 2021) when Plaintiff was placed on medical leave from work purportedly due to his accident-related injuries. He took the amount Plaintiff made the prior year—$85,463—and opined that "during the year off work . . . I believe [Plaintiff] lost $85,463 minus any wage replacement provided to him."

What saves this opinion is its grounding in reliable facts and its tie to Best's expertise. Plaintiff's social security statement shows he made $85,463 in 2019. Dkt. 41-2, at p.9. The accident in this case occurred on July 6, 2020. Plaintiff's employer placed him on medical leave in August 2020 due to the severe headaches and "sensory overload" he experienced when he tried to return to work. *Id.* at p.2. Plaintiff eventually returned from leave and worked 40 hours a week beginning July 6, 2021.

*Id.* at p.4. These are reliable and verifiable facts upon which Best basis his past wage loss opinion. And while his methodology for calculating those damages is uncomplicated, Rule 702 neither expressly nor impliedly requires an expert's mathematical calculations to be complex. *See WWP, Inc. v. Wounded Warriors Fam. Support, Inc.*, 628 F.3d 1032, 1040 (8th Cir. 2011) ("There is not . . . an implicit requirement in Fed. R. Evid. 702 for the proffered expert to make *complicated* mathematical calculations.") (emphasis in original). "Although the resulting calculation may be a simple one, it is connected to [Best's] expertise and explanation regarding his opinion that Plaintiff cannot work, and that [his] prior job salary was [his] pre-injury earning capacity." *Burris v. Ethicon, Inc.*, No. 3:20 CV 1450, 2021 WL 3190747, at *18 (N.D. Ohio July 28, 2021); *see also In re Prempro Prods. Liab. Litig.*, 514 F.3d 825, 831 (8th Cir. 2008) (district court did not abuse its discretion in failing to exclude expert testimony that represented "an exercise in basic math using simple deductive reasoning").

The Court will not strike Best's opinions regarding Plaintiff's past wage loss.[2]

---

[2] In so ruling, the Court does not find Best's past wage loss opinion implicates Fed. R. Evid. 403. Defense counsel is free to cross examine Best on the simplicity of his calculation or other matters related to his opinion on past wage loss. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking . . . admissible evidence.").

**B.**     **Best's Lost Earning Capacity Opinion**

In his report, Best offers that "it is also my opinion [Plaintiff] is likely to incur a substantial potential for lost future earning capacity secondary to reduction in worklife (sic)." Dkt. 41-2, p.9. He goes on: "If [Plaintiff] is only able to work for another 2 years secondary to his medical conditions he will be expected to incur a complete loss of earning capacity from age 60 to age 68. Simply multiplying the average earnings he demonstrated pre-injury over those presumed lost 8 years yields an expected future wage loss of $668,682.64 based on reduction of worklife (sic). ($83,585.33 x 8 years = $668,682.64)[.]" *Id.*

First, Best's qualifications to render an opinion on Plaintiff's lost earning capacity are suspect. Black's Law Dictionary defines "lost earning capacity" as "[a] person's diminished earning power resulting from an injury." Black's Law Dictionary (11th ed. 2019). While Best has experience calculating wage losses, there is little in his background to suggest his experience determining a person's earning capacity, determining the extent of a reduction in that capacity, and then placing a monetary value on that diminution. His own deposition testimony confesses the point, to wit:

> A.     .   .   . So my area of expertise is really in job analysis, understanding what certain job requirements are, the availability of certain jobs, the ability to modify or accommodate functional limitations, whether they're physical or mental, as opposed to looking specifically at, you know, employment trends or other areas. So there are experts in a lot of different areas.
>
> Q.     Do you have any expertise in the area of economics?
>
> A.     No.

7

Dkt. 44-1, p.15 ll:10-20. Best went on to testify that he does not have "specific credentials" in calculating the present value of future losses. *Id.* at ll:21-25. He testified that calculating economic losses falls within his expertise from only "a basic standpoint[.]" *Id.* at p.16 ll:22-24. And while he testified that calculating "lost earnings" is within his expertise, regarding lost earning capacity he testified only that the "*identification of the potential for a loss* of earning capacity" is within his expertise, as opposed to actually calculating those damages. *Id.* at p.17 ll:3-9.

Second, Best's calculation of these damages is not based on sufficient facts or reliable principles or methods. It is based solely on Plaintiff's lay opinion that he likely won't be able to work to regular retirement age due to his injuries. Specifically, Best writes in his report:

> [Plaintiff] stated that he had no previous specific "age of retirement" identified, and would likely have continued working until he simply could not any longer. Unfortunately, he now feels he will not likely make regular retirement age due to his combination of symptoms and disabilities. "I'm really struggling now," he stated during our interview. He stated that he and Dr. Strader *have had conversations about applying for disability if* he reaches the point where he can no longer work safely anymore. He stated, "I'm almost there now. Making it to age 60 will be a chore. I don't know if I can do it."

Dkt. 41-2, p.5 (emphasis added). From this, Best makes the inferential leap that Plaintiff "is likely to incur a substantial potential for lost future earning capacity secondary to reduction in worklife (sic)." *Id.* at p.9. He goes on to explain: "As he has indicated, and as is described in the medical summary section of this report, [Plaintiff] states he has already had conversations with his neurologist regarding a

likely eventuality that he will not be able to work until regular retirement age secondary to his constellation of difficulties." *Id.*

Best's opinion here is not based on any medical professional opining that it is probable Plaintiff will be unable to work in the future due to his accident-related injuries. *Couture v. United Airlines, Inc.*, No. 20-CV-03181-CNS-SKC, 2023 WL 2375057, at *2 (D. Colo. Mar. 6, 2023) ("[C]ourts consistently find that vocational experts are qualified to offer opinions within their experience that 'are based on factual predicates provided by medical experts.'") (quoting *Cereceres v. Walgreen Co.*, No. 20-CV-03406-NYW-MEH, 2022 WL 17665056, at *6 (D. Colo. Dec. 14, 2022)). It is instead based on the Plaintiff's view that he "likely" will have to stop working before retirement age and his conversation with Dr. Strader about applying for disability benefits should that occur. But "[i]t is uniformly held that where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts." *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1957). And "[w]here the injury is obscure . . . a loss of future earnings capacity must be established by expert medical testimony in order to avoid pure speculation on the part of the jury." *Parra v. Atchison, Topeka & Santa Fe Ry. Co.*, 787 F.2d 507, 509 (10th Cir. 1986).

Plaintiff's injuries are of the obscure variety. His injuries involve diagnoses of traumatic brain injury, sequelae, mild neurocognitive disorder, post-concussion syndrome, and he suffers from cervicogenic headache, posttraumatic headache of an

unspecified chronicity pattern, visual disturbance, and other issues. Dkt. 41-2, p.4. Accordingly, because Best's lost earning capacity calculation is not based on any factual predicates from a medical expert regarding the extent of his injuries and their probable effect on his ability to work at all in the future, Best's opinion in this regard fails to satisfy Rule 702.

\*   \*   \*

For the reasons shared above, Plaintiff has met his burden to show that Best's past wage loss opinions satisfy the requirements of Fed. R. Evid. 702, but he has not met his burden to show that Best's lost earning capacity opinions do the same. The Motion, therefore, is GRANTED IN PART AND DENIED IN PART. Best's lost earning capacity opinions and calculations are hereby stricken.

DATED:  May 23, 2024

BY THE COURT:

S. Kato Crews
United States District Judge