IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-01145-SKC-JPO

TIMOTHY KORBE,

      Plaintiff,

v.

DOUG ANDRUS DISTRIBUTING, LLC

      Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE
OPINIONS OF PLAINTIFF'S EXPERT RAFER LEACH, M.D.,
REGARDING MEDICAL EXPENSES (DKT. 42)**

---

The above-referenced Motion is now before the Court. Dkt. 42. In his Rule 26(a)(2)(B) disclosures, Plaintiff Timothy Korbe disclosed W. Rafer Leach, M.D. Among other opinions, Dr. Leach opines on the cost of Plaintiff's future medical treatment. Defendant Doug Andrus Distributing LLC seeks to preclude this opinion under Fed. R. Evid. 702.

The Court has jurisdiction under 28 U.S.C. § 1332(a). This case arises from a car accident that occurred on July 7, 2020, between Plaintiff and a person who was operating a commercial semi-truck while in the course and scope of his employment with Defendant. The semi-truck collided with Plaintiff's vehicle causing Plaintiff to suffer various claimed physical and cognitive injuries. Plaintiff has sued Defendant

1

under theories of respondeat superior and agency liability. Dkts. 17 and 68 (Section 3). Defendant has admitted the semi-truck driver was operating the vehicle within the course and scope of his employment and has admitted liability. Only the nature and extent of Plaintiff's alleged injuries, damages, and losses, are in dispute.

The Court has carefully considered the arguments and matters raised by the parties in their exhibits and briefing on the Motion. Dkts. 42 (motion), 43 (response), 46 (reply). Defendant has requested a hearing, but no hearing is necessary. Based on the Court's analysis below, the Motion is GRANTED.

## Legal Principles

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). A witness who qualifies as an expert by knowledge, skill, experience, training, or education may offer their opinions at trial if the proponent satisfies the court that it is more likely than not that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Trial courts determine the reliability of expert testimony by considering whether: (1) the theory has been or can be tested or falsified; (2) the theory or

technique has been subject to peer review and publication; (3) there are known or potential rates of error regarding specific techniques; and (4) the theory or approach has general acceptance. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993)); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). And of course, expert testimony must also be relevant to be admissible. *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006); Fed. R. Evid. 401.

The district court performs an important gatekeeping function to assure expert testimony meets these requirements. *Macsenti v. Becker*, 237 F.3d 1223, 1230-34 (10th Cir. 2001). Even still, courts are mindful that "Rule 702 mandates a liberal standard" for the admissibility of expert testimony. *Cook*, 580 F. Supp. 2d at 1082. The rejection of expert testimony has proven "the exception rather than the rule." Fed. R. Evid. 702, advisory committee notes (2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The decision to admit or exclude expert testimony is committed to the sound discretion of the district court. *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599, 603 (10th Cir. 1997).

### The Opinion and the Parties' Arguments

Defendant challenges only Dr. Leach's opinion regarding the usual and customary charges for Plaintiff's future medical treatment—Defendant does not

challenge Dr. Leach's qualifications to render this opinion or the relevance of the

opinion. In his report, Dr. Leach prefaces his opinion with the following statement:

> **Estimation of usual and customary charges for medical care recommendations:** I have been requested to offer an estimation of charges regarding my recommendations for future medical needs. *When estimating usual and customary charges I am utilizing my experience and expertise as a medical doctor, and reviewer of medical records, medical bills, and medical charges resources on a regular basis over the past 20 years.*

Dkt. 42-1, p.27 (bold in original; italics added). He then provides the following cost

estimates:

| | |
|---|---|
| Interventional Pain Management, evaluation and treatment, occipital neuralgia | |
| (E&M initial $500, 3 f/u visits at $400/visit) | $1,700 |
| Fluoroscopically guided third occipital nerve blockade (cervical, multiple level) | |
| | $5,000 - $8,000 /procedure * |
| Radiofrequency neuroablation, TON | $8,000 - $10,000/procedure * |
| Trigger point injection therapy; occipital-cervical-thoracic ($450/procedure x 46 | $2,700 |
| Physiotherapy (myofascial release, dry-needling, etc) $80/unit x 24 units) | $1,920 |
| Occipital and cervicothoracic regions | |
| Flexion/extension radiographs, cervical | $200 |
| Digital Motion X-ray / mensuration analysis evaluate ligament instability | $1,500 - $2000 |
| Vestibular physiotherapy | + |
| Audiometry | + |
| In-canal devices for tinnitus if indicated | $2,000 - $3,000 # |
| Maintenance Interventional Pain Management/Spine Surgery evaluation | $500 / year # |

*\* Indicates charges, or range of charges, for procedure to include surgical facilities fees, anesthesia and surgical professional fees, equipment/hardware/implant costs, and other usual and customary ancillary charges.*

*+ Charges are anticipated to be commensurate with charges incurred to date for same services.*

*# If additional treatment recommendations are made by consulting specialists, to include additional procedures, equipment, or medications, then additional charges, yet to be determined, will apply.*

*Id.* at p.28. This is the full extent of his opinion regarding the cost of Plaintiff's future medical treatment.

Defendant argues that Dr. Leach does not disclose any reliable methodology or basis for his determination of the reasonable value of Plaintiff's future medical expenses. Rather, he instead vaguely refers to "my experience and expertise as a medical doctor, and reviewer of medical records, medical bills, and medical charges resources on a regular basis over the past 20 years." Defendant points out that Dr. Leach's report contains no reference to any data he relied on. As a result, Defendant argues Dr Leach's opinion cannot meet the threshold of reliability and his opinion is the type of "subjective belief" and "unsupported speculation" that is prohibited by *Daubert* and its progeny.

Plaintiff counters that Dr. Leach based his opinion on his many years of experience, and experience is widely accepted as a permissible basis for expert opinions. He argues that Defendant fails to explain why Dr. Leach's regular exposure to these cost amounts in his capacity as a treating medical provider does not allow Dr. Leach to explain the typical amounts to a jury; and further, experts are routinely called upon to offer opinions about the costs of various things within their field of expertise. According to Plaintiff, "because Dr. Leach has the experience necessary to enable him to provide expert testimony regarding the costs of Plaintiff's anticipated future medical care, and because the applicable case law demonstrates that this kind

of expert testimony is proper, Defendant's request that Dr. Leach's opinions on these matters be stricken must be denied."

## Analysis and Findings

If an expert is sufficiently qualified then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Nacchio*, 555 F.3d at 1241. "Reliability questions may concern the expert's data, method, or his application of the method to the data." *Id.* An expert's conclusions must be based on the "methods and procedures of science," not on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Thus, the focus of reliability is "solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.

Plaintiff is correct that a witness may be qualified as an expert based on their experience—Rule 702 makes the point explicit. Fed. R. Evid. 702 ("A witness who is qualified as an expert by . . . experience . . . may testify in the form of an opinion[.]"). But "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* (advisory committee note to the 2000 amendments). Proper exercise of a court's gatekeeping function does not allow a court to simply take the expert at their word. *Id.* To be sure, Rule 702 expressly provides that expert opinion be based on "sufficient facts or data." Fed. R. Evid. 702(b). "Thus, the proponent of

expert testimony must show that the witness' experience, and resultant specialized knowledge, is sufficiently related to the issues and evidence." *Vigil v. Burlington N. & Santa Fe Ry. Co.*, 521 F. Supp. 2d 1185, 1204 (D.N.M. 2007).

Dr. Leach's medical cost opinion is based solely on his experience. He explains this in his report when he states: "When estimating usual and customary charges I am utilizing my experience and expertise as a medical doctor, and reviewer of medical records, medical bills, and medical charges resources on a regular basis over the past 20 years." Dkt. 42-1, p.27. And he amplified the point during his deposition regarding the basis of his cost estimate, to wit:

> A. (by Dr. Leach) Sure. So, really, it's significantly based upon my real-day, real-world experience. The recommendations -- I mean, I make interventional pain management recommendations on a daily basis. I perform quite a few of these procedures. I'm familiar, by doing the reports that we're discussing, about what the charges are for such procedures. So it's based on my experience. I also look at -- you know, there's a yearly cost analysis through Wasserman and Medicare that also can be referenced, which I have looked at, but, once again, these are just bread-and-butter treatment modalities that I use on a daily basis. Dkt. 42-3, depo. p.39 ll:24-25, p.40 ll:1-11.

> A. That's correct. This is a range of charges based on my experience. *Id.*, depo. p.44 ll:17-19.

> A. . . . . I put in there that I've been asked to, you know, offer estimations and that I am utilizing my experience and expertise as a medical doctor and reviewer of medical records, medical bills, and medical charge resources on a regular basis over the past 20 years. So that's probably the best overarching general description of how I arrive at these numbers. *Id.*, depo. p.45 ll:19-25, p.46 l:1.

> A. The point is I look at these things all the time, and I've done my best to come to a nice range that represents maybe the 50th to 75th percentile. *Id.*, depo. p. 49 ll:4-6.

And while he testified that he is familiar with, and possibly referenced, cost data from other facilities or resources (such as Wasserman and Medicare), he cites no data or data sources in support of his cost estimates in his report. *See generally* Dkt. 42-1, pp.27-28; Dkt. 42-3, depo. p.45 ll:3-4 ("A. (by Dr. Leach) There are no specific references [to the guides reviewed] within my report regarding these numbers."), ll:12-15 ("Q. (by Mr. Bristol) Well, I'm just asking about your report. There's nothing in your report indicating what data was contained in the guides that you reviewed; correct? A. (by Mr. Leach) That's correct.").

This is textbook expert opinion connected to data (if any) only by the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Federal courts routinely exclude as unreliable expert opinions that are based solely on the expert's experience and which lack any methodology whatsoever. *See, e.g., Dominguez v. Lubbock*, No. CIV-11-1347-R, 2012 WL 9431886, at *2 (W.D. Okla. Sept. 21, 2012) ("Mr. Huff does not cite any specific facts or data on which his opinion that Plaintiff will have lost or has lost thirty percent (30%) of her work life expectancy if she does not receive retraining, nor does he explain the methodology or principles employed to reach that conclusion."); *Miller v. Gorski Wladyslaw Est.*, No. 05-189, 2006 WL 3533113, at *4 (W.D. La. Dec. 6, 2006) ("[A]ll that has been offered to the court in support of the reliability of these estimates is Dr. Henderson's own assurance

that based on his experience with other patients, the estimates made . . . are reliable."); *see also Erickson v. Baxter Healthcare, Inc.*, 131 F. Supp. 2d 995, 999 (N.D. Ill. 2001) ("To allow doctors to testify about specific statistical or medical questions and base their testimony only on general experience would be to say that doctors are qualified experts on every medical subject merely because they wear white coats.").

As one court explained, "[e]xperts are held to the same standards of 'intellectual rigor' in testimony as in their scholarly work." *Erickson*, 131 F. Supp. 2d at 1000 (citing *Kumho Tire Co.*, 526 U.S. at 152). "It would be unacceptable to cite no sources for statistical evidence in a scholarly work, and it is likewise unacceptable in an expert disclosure." *Id.* Dr. Leach's estimates of Plaintiff's future medical costs are based solely on his experience without reference to data or any methodology used to arrive at those estimates. The Court finds Dr. Leach's opinion, therefore, is unreliable and fails to satisfy Rule 702.

\\

\\

\\

\\

For the reasons shared above, Plaintiff has not met his burden to show that Dr. Leach's opinion and proposed testimony regarding Plaintiff's future medical expenses satisfies the requirements of Fed. R. Evid. 702. The Motion, therefore, is GRANTED and Dr. Leach's future medical cost opinion is stricken.

DATED:  May 24, 2024

BY THE COURT:

S. Kato Crews
United States District Judge